UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                          No. 1:16-CR-03465-MV

EDGAR EDIEL SOLORIO-HERNANDEZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion to Suppress Evidence [Doc. 19]. The government timely filed a Response in Opposition [Doc. 20] and Defendant replied. [Doc. 21]. The Court, having considered the Motion, briefs, relevant law and being otherwise fully informed, finds that the Motion is not well-taken and will be denied.

### BACKGROUND

On August 5, 2016, Drug Enforcement Administration Special Agent Jarrell W. Perry conducted a drug interdiction operation at the Greyhound bus station in Albuquerque, New Mexico. Agent Perry was assisted by Task Force Officer William Dunaway. Agent Perry and Officer Dunaway planned to investigate an eastbound Greyhound bus that was scheduled to arrive at the station at 9:55 a.m.

After the bus arrived and all of the passengers disembarked, Agent Perry and Officer Dunaway boarded the bus. They were specifically interested in any suspicious luggage that might contain illegal narcotics. Agent Perry noticed a "medium-sized, black-colored, rolling-type suitcase" stored in the overhead luggage compartment. [Transcript of Hearing on Motion to

Suppress ("Transcript"), February 24, 2017, 9:25]. The suitcase caught the agent's attention because it was unusually large to be stored in the overhead compartment.

Agent Perry examined the suitcase to determine if it had a nametag attached to the handle. Finding no nametag, the agent smelled the bag to determine if any masking agents were present. Agent Perry "smelled an overwhelming odor . . . of fabric softener or dryer sheets emanating from inside of [the] suitcase." [Transcript, 12:23-25]. The agent described that odor was strong enough that he "didn't have to get very, very close to it to smell [it]." [Transcript, 13:4-6]. Based on his experience, Agent Perry suspected that the scent of fabric softener or dryer sheets was being used to mask the scent of illegal narcotics in the suitcase.

Agent Perry then removed the suitcase from the overheard compartment to further examine whether it had a nametag. When he took down the suitcase, Agent Perry observed that it was unusually heavy for its size. He continued to look for a name tag and, after approximately 10 seconds, returned the suitcase to the overhead compartment. Agent Perry was asked on direct examination if he "ever tr[ied] to manipulate the exterior of the bag to determine the contents within the bag?" [Transcript, 16:6-8]. The agent responded, "No, I did not, not at that time or any time." [Transcript, 16:9]. Based on these observations, Agent Perry believed the suitcase contained illegal narcotics.

Agent Perry and Officer Dunaway then took seats on the bus and observed the passengers as they reboarded. They were specifically looking for anyone who interacted with the suitcase. The agent observed an individual (later identified as Defendant) "walk[] up the steps [onto the bus], . . . immediately lean[] over in the driver's seat, and . . . look[] . . . exactly right towards that black suitcase." [Transcript, 23:18-21].

That individual walked "down the aisleway, . . . turned his body, faced the suitcase. He pulled the retaining cord out towards him. He looked from the front of the suitcase . . . to the back of the suitcase, put the retaining cord back, and he sat down in the fifth seat right" behind the suitcase. [Transcript, 24:8-15]. Agent Perry observed that there were no other bags in the overhead compartment area immediately surrounding the suitcase and there was no passenger occupying the seat immediately beneath the suitcase. Based on these observations, Agent Perry believed that Defendant was the owner of the suitcase.

Agent Perry approached Defendant, displayed his D.E.A. badge, and identified himself as a police officer.[1] During their conversation, Defendant leaned forward in his seat and would not look at Agent Perry. Defendant stated that he was traveling to Oklahoma for work. Agent Perry examined Defendant's bus ticket and noticed that it listed the name "Mr. Alex." The agent then asked for Defendant's identification. Defendant handed Agent Perry a Mexican Consulate card with the name "Edgar Ediel Solorio-Hernandez." Based on this identification card, Agent Perry concluded that Defendant was traveling under a false name.

Agent Perry asked Defendant if he had any luggage with him, and Defendant responded that he did not. The agent specifically pointed to the suitcase in the overhead compartment, and Defendant stated that it did not belong to him. Agent Perry then removed the suitcase from the compartment and asked each passenger on the bus if it belonged to them. Agent Perry asked Defendant again if the bag belonged to him, and Defendant denied ownership. None of the other passengers on the bus claimed ownership of the bag either.

Agent Perry determined that the suitcase was abandoned and removed it from the bus. Once off the bus, the agent opened the suitcase and found numerous clear, heat-sealed, plastic

---

[1] Agent Perry began the conversation in English, but switched to Spanish after Defendant told him that he didn't speak English. Agent Perry testified that he is "not proficient, but . . . can conduct a consensual encounter in Spanish." [Transcript, 27:5-7].

bundles concealed in a zipper compartment on the bottom. The agent conducted a field test on the bundles and determined that they contained methamphetamine. Agent Perry then reboarded the bus and placed Defendant under arrest.

On August 23, 2016, the government filed a one-count Indictment charging Defendant with Possession With Intent to Distribute 500 Grams and More of a Mixture and Substance Containing Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Thereafter, Defendant filed the instant Motion to Suppress Evidence. On February 24, 2017, the Court held an evidentiary hearing on Defendant's motion, during which Agent Perry, Officer Dunway, and defense counsel investigator Eric Hansen testified. At the conclusion of the hearing, the Court requested written closing arguments and took the matter under advisement. On March 2, 2017, Defendant submitted a Hearing Brief and Argument in Support of the Motion to Suppress Evidence [Doc. 28], and on March 3, 2017, the government submitted its Brief in Support of Response to the Defendant's Motion to Suppress Evidence Filed on October 14, 2016. [Doc. 29].

## DISCUSSION

Defendant makes two arguments in support of his motion.[2] First, Defendant asserts that Agent Perry's handling of the suitcase constituted an unreasonable search. Second, Defendant argues that Agent Perry seized the suitcase by depriving Greyhound of its custody of the bag. The government responds that Agent Perry's handling of the suitcase did not constitute a search, within the meaning of the Fourth Amendment. The government did not respond to Defendant's

---

[2] In its brief, the government raised the threshold question of whether Defendant has standing to challenge the search. The government asserts that Defendant lacks standing because he abandoned the suitcase. Of course, Defendant is permitted to testify or stipulate to his ownership of the suitcase to establish standing. *See United States v. Nicholson*, 144 F.3d 632, 635 (10th Cir. 1998) (citing *Simmons v. United States*, 390 U.S. 377, 389-94 (1968)) (where the defendant stipulated to ownership of bags to establish standing). After a colloquy with the Court, Defendant stipulated to "control and possession of [the] suitcase" for the purposes of the suppression hearing. [Transcript, 5:13-18]. Accordingly, the Court is satisfied that, through this stipulation, Defendant has established standing to proceed with the motion to suppress.

seizure argument, which was presented for the first time in Defendant's written closing argument. For the reasons discussed below, Agent Perry's actions constituted neither a search nor a seizure of Defendant's suitcase, within the meaning of the Fourth Amendment. Accordingly, Defendant's motion to suppress will be denied.

I.  The Alleged "Search" of Defendant's Suitcase

   a. Legal Standard

The Fourth Amendment protects the "right of the people to be secure in their . . . effects, against unreasonable searches." U.S. CONST. amend. IV. "A search for purposes of the Fourth Amendment occurs when government officials violate an individual's legitimate expectation of privacy." *Nicholson*, 144 F.3d at 636. A search undertaken without a warrant, subject only to a few, well-established exceptions, is per se unreasonable under the Fourth Amendment. *Id.* at 638. "When a defendant moves to suppress evidence obtained as a result of an allegedly unconstitutional search, he has the burden of demonstrating a subjective expectation of privacy that society is prepared to recognize as reasonable." *Id.*

"Travelers have a legitimate expectation of privacy in their personal luggage, which the Fourth Amendment protects." *Id.* at 636 (citing *United States v. Chadwick*, 433 U.S. 1, 13 (1977)). Nevertheless, "not every investigative technique which reveals something about the contents of a traveler's luggage constitutes a search within the meaning of the Fourth Amendment." *Nicholson*, 144 F.3d at 636. In particular, "the use of sensory perception does not necessarily constitute a search," and, accordingly, an agent's "touching of a bag's exterior does not necessarily constitute a search." *Id.* at 636-37. Rather, it is "[t]he degree of intrusion that is the determining factor as to whether an officer's contact with the exterior of luggage constitutes a search under the Fourth Amendment." *Id.* at 639.

In *Nicholson*, the detective removed the defendant's carry-on bag from the overhead rack and "manipulated" it. *Id.* As a result, he was able to detect tightly wrapped bundles inside the bag. *Id.* The Tenth Circuit found that because the manner of the detective's manipulation of the bag was one that "Defendant did not reasonably expect from other passengers," the detective conducted a search within the meaning of the Fourth Amendment. *Id.*

Similarly, in *Bond v. United States*, 529 U.S. 334, 336 (2000), an agent entered a bus and "squeezed" the soft luggage in the overhead storage space above the seats as he walked from the back of the bus to the front. In particular, the agent squeezed the petitioner's green canvas bag and noticed that it contained a brick-like object, which was later revealed to be methamphetamine. *Id.* The Supreme Court held that the agent's physical manipulation of the petitioner's bag violated the Fourth Amendment. *Id.* at 339.

      b. <u>Instant Case</u>

Agent Perry's handling of the suitcase in this case did not rise to the level of a search, within the meaning of the Fourth Amendment. After removing the bag from the overhead compartment, Agent Perry held the bag for approximately ten seconds while looking for a name tag. The agent then smelled the bag, and placed it back in the overhead compartment. Agent Perry did not "manipulate" or "squeeze" the bag, as in *Nicholson* or *Bond*. Moreover, Agent Perry removed the bag from the overhead compartment specifically to look for a name tag. It was not a "tactile inspection . . . aimed at discovering the nature of the contents of the bag." *Nicholson*, 144 F.3d at 638 (quoting *United States v. McDonald,* 100 F.3d 1320 (7th Cir.1996)).

Agent Perry's sniff of the suitcase does nothing to shift his actions into the realm of Fourth Amendment protection. It is well established that "a human sniff is not a search." *Florida v. Jardines*, 569 U.S.1, 16 n.2 (2013). Unlike manipulating a bag, which can reveal its contents, a

sniff reveals no more than the likely presence of illegal drugs. *See Nicholson*, 144 F.3d at 638. In this case, Agent Perry sniffed the suitcase because, as he approached it, he detected an "overwhelming odor . . . of fabric softener or dryer sheets." [Transcript, 12:23-25]. The agent testified that he knew from his experience that fabric softener and dryer sheets are used to mask the scent of illegal drugs. By sniffing the bag, Agent Perry merely confirmed the presence of a potential masking agent; he did not discover anything about the actual contents of the suitcase.

Because Agent Perry's handling of the suitcase did not "depart[] from the type of handling a commercial bus passenger would reasonably expect his baggage to be subjected," it was not a "search," within the meaning of the Fourth Amendment. *Nicholson*, 144 F.3d at 639.

II.     The Alleged "Seizure" of Defendant's Suitcase

In his closing argument, for the first time, Defendant asserts that Agent Perry's handling of the suitcase constituted a seizure. Specifically, Defendant argues that "Agent Perry seized Mr. Solorio's bag during pre-boarding in violation of the Fourth Amendment when he deprived Greyhound of its custody of the bag in a manner which was inconsistent with greyhound's law enforcement operating procedures." [Doc. 28 at 8]. Specifically, the Greyhound law enforcement operating procedures require that "law enforcement officers must receive specific permission from the city manager and be accompanied by a Greyhound employee if they enter an area where baggage or packages are stored." [Transcript, 58:4-8]. Defendant argues that because Agent Perry was not escorted by a Greyhound employee, he "deprived Greyhound of its custody and safe keeping of the bag during the layover." [Doc. 28 at 9].

The government did not respond to this argument; however, because the Court rejects Defendant's argument, the government is not prejudiced by not having an opportunity to respond.

a. Legal Standard

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). In *United States v. Hill*, 805 F.3d 935, 937 (10th Cir. 2015), for example, DEA agents conducted a drug interdiction operation on an Amtrak train. *Id.* at 936. The agents observed a suitcase in the common luggage area with no name tag. *Id.* Passengers stored pieces of unchecked luggage in this common area. *Id.* One of the agents removed the suitcase from the common luggage area, rolled it down the center aisle of the train, and asked each passenger if the bag belonged to them. *Id.* All passengers, including the defendant, denied ownership. The agents deemed the bag abandoned and searched it. *Id.*

The Tenth Circuit explained that "cases addressing potential seizures of luggage fall within two typical paradigms." *Id.* at 938. The first type of case involves "taking luggage from the direct possession of a traveler." *Id.* On the other hand, the second type of case involves a "brief detention of checked baggage that does not delay the bag from reaching its intended destination." *Id.* The first type of case amounts to a seizure, while the second does not. *Id.* Thus, "in assessing whether a detention of property amounts to a meaningful interference with the property owner's possessory interests, courts must be mindful of the nature of the possessory interest implicated." *Id.*

The Court found that "Hill's possessory interest in the . . . bag stowed in the common luggage area of the coach [was] intermediate between a bag in his direct possession and a bag checked with Amtrak." *Id.* While Hill could have reasonably expected that the bag could be moved while it was in the common storage area, the Tenth Circuit held that by removing the bag from the storage area and walking it down the aisle of the train, the agent's behavior "deviated

significantly from a reasonable traveler's expectations as to how his bag would be treated in the common storage area and, concomitantly, deprived Hill of his possessory interest in being able to access his luggage on his own schedule." *Id.* Accordingly, the Court held that the agent's handling of the suitcase constituted a seizure in violation of the Fourth Amendment. *Id.* at 939.

      b. <u>Instant Case</u>

Agent Perry's handling of Defendant's suitcase did not constitute a seizure. Defendant's suitcase was stowed in the overhead compartment. Agent Perry removed the suitcase from the overhead compartment for approximately 10 seconds and briefly examined the suitcase for a nametag. The agent then replaced the bag where he found it. Defendant could reasonably expect that other passengers may have to move his suitcase to access the overhead compartment. Agent Perry's handling of the bag was no more intrusive than what Defendant could reasonably expect from other passengers.

Although Agent Perry, as in *Hill*, eventually took possession of the suitcase and walked it down the aisle of the bus in an attempt to discover who it belong to, this case is distinguishable from *Hill* because Agent Perry took control of the bag only after Defendant disclaimed ownership of it. Agent Perry asked Defendant if he had any luggage with him and Defendant said he did not. Agent Perry then pointed at the suitcase and asked Defendant if it belonged to him. Again, the Defendant said it did not. In *Hill*, the Tenth Circuit held that the agent "deprived Hill of his possessory interest in being able to access his luggage on his own schedule." *Id.* Here, Defendant disclaimed any possessory interest in the suitcase prior to Agent Perry taking possession of it.

Defendant relies solely on one Eighth Circuit case, *United State v. Va Lerie*, 424 F.3d 694 (8th Cir. 2005). While this Court is not bound by *Va Lerie*, it is worth noting that *Va Lerie*

only further supports the Court's ruling. In *Va Lerie*, the Eighth Circuit reversed a district court's decision granting the defendant's motion to suppress. An officer had removed the defendant's checked luggage from the bus's lower luggage compartment in order to seek the defendant's consent to search. *Id.* at 698. In reversing, the Eighth Circuit held that such conduct did not constitute a seizure because the removal of the luggage did not "(1) delay Va Lerie's travel or significantly impact Va Lerie's freedom of movement, (2) delay the timely delivery of the checked luggage, or (3) deprive Greyhound of its custody of the checked luggage." *Id*. For those reasons, the court held that the officer's removal of the luggage did not constitute a seizure. *Id*. at 709.

Like in *Va Lerie*, Agent Perry's handling of Defendant's suitcase did not delay Defendant's travel. The agents boarded the bus during a regularly scheduled stop in Albuquerque while the passengers were not on board. The second *Va Lerie* factor is not applicable to this case because Defendant's luggage was stowed in the overhead compartment; it was not checked below the bus. Lastly, Agent Perry's actions did not deprive Greyhound of its custody of the luggage. The court explained that "[t]o test the breadth of the carrier's custodial rights, we ask whether the government's actions go beyond the scope of the passenger's reasonable expectations for how the passenger's luggage might be handled when in the carrier's custody." *Id.* at 707 n.7. As explained above, it is entirely reasonable for a passenger to expect their luggage, which has been stowed in an overhead compartment, to be touched or moved by other passengers. Agent Perry's handling of the suitcase did not exceed the scope of a passenger's reasonable expectations.

Thus, even if Agent Perry violated Greyhound's law enforcement operating procedures by entering the bus without a Greyhound employee, the agent's conduct on the bus did not

amount to a seizure because his handling of the suitcase did not exceed what a reasonable passenger could have expected.

Moreover, *Va Lerie* involved *checked* luggage, not luggage carried on and stowed in an overhead compartment. A passenger's reasonable expectation with respect to carried on luggage differs significantly compared to checked luggage. While a passenger who secures his luggage in the checked luggage compartment may reasonably expect that it will remain their undisturbed for the entire trip, a passenger who carries luggage onto a bus and places it in the overhead compartment does not share that expectation.

Because Agent Perry's handling of the suitcase did not exceed what could be reasonably expected by a passenger who carries luggage onto the bus and stows it in the overhead compartment, Agent Perry's handling of Defendant's suitcase did not constitute a seizure, within the meaning of the Fourth Amendment.

## CONCLUSION

Based on the foregoing analysis, the Court finds that Agent Perry's handling of Defendant Edgar Ediel Solorio-Hernandez's suitcase was neither a search nor a seizure, within the meaning of the Fourth Amendment. Agent Perry did not squeeze or manipulate the suitcase in any way, and his handling of the bag was consistent with what a reasonable passenger could expect when placing lugging in the overhead compartment.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress is DENIED.

DATED this 19th day of October, 2017.

_____
MARTHA VAZQUEZ
United States District Judge

| | |
|---|---|
| Brian A. Pori | Samuel A. Hurtado |
| Federal Public Defender | Assistant United States Attorney |
| *Attorney for Defendant* | *Attorney for Plaintiff* |